**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

May 17 2012, 9:18 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ADAM C. SQUILLER**
Squiller Law Office, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.H., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 57A03-1201-JV-25 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Robert E. Kirsch, Judge
Cause No. 57D01-1111-JD-71

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Thirteen-year-old J.H. has a history of violating rules and committing offenses at school. These acts have netted him suspensions and ultimately two expulsions. His conduct in and out of school has twice resulted in delinquency adjudications. While on probation for his first delinquency finding, J.H. admitted that he committed acts that would have been theft and harassment if committed by an adult. Thus, he received a second delinquency finding for those acts, and this time, the juvenile court committed him to the Indiana Boys' School.

J.H. now appeals, challenging his placement at the Indiana Boys' School. Finding that the juvenile court acted within its discretion, we affirm.

## Facts and Procedural History

In March 2011, thirteen-year-old J.H. was expelled from school for theft. Immediately thereafter, the State filed a delinquency petition against J.H., seeking a true finding for conduct that would have constituted theft if committed by an adult. In May 2011, the juvenile court adjudicated J.H. a delinquent and placed him on probation.

J.H. was readmitted to school for the next school year, and in early September, he was suspended for three days for stealing money from another student. Later that month, he made a prank 911 call. He was still on probation when he committed both acts. In November 2011, he was expelled for the remainder of the semester for stealing money, pulling a student's pants down, possessing a knife on school grounds, and an "accumulation" of other offenses. Tr. at 21.

On November 18, 2011, the State filed a delinquency petition, alleging that J.H. committed acts that would have constituted class D felony theft, class B misdemeanor harassment, and class B misdemeanor possession of a knife on school property if committed by an adult. J.H. admitted to the conduct that would have been theft and harassment. On December 19, 2011, the juvenile court entered true findings for the theft and harassment conduct and dismissed the knife possession count. The juvenile court committed J.H. to the Indiana Boys' School as recommended by both the prosecutor and the chief probation officer. J.H. now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

J.H. challenges the juvenile court's decision to commit him to the Indiana Boys' School. "[S]ubject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition," the placement decision for a child adjudicated a delinquent is a matter left to the juvenile court's sound discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). Thus, we review such a disposition using an abuse of discretion standard. *Id*. An abuse of discretion occurs when the juvenile court's action is clearly against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual inferences drawn therefrom. *Id*.

The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences. *Id*. Indiana Code Section 31-37-18-6 states,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>> (1) is:
>>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>> (2) least interferes with family autonomy;
>> (3) is least disruptive of family life;
>> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Here, J.H. argues that in committing him to the Indiana Boys' School, the juvenile court failed to consider intermediate placements and therefore disregarded the statutory directive to select the least restrictive placement. We disagree. "Without question, the statute requires the juvenile court to select the least restrictive placement in most situations; however, the statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 28-29. In other words, the least restrictive placement is required "[*i*]*f consistent* with the safety of the community and the best interest of the child." Ind. Code § 31-37-18-6 (emphasis added).

J.H. relies on the brevity of the dispositional order in making his argument. However, the record as a whole shows that the juvenile court did not ignore intermediate placements. Rather, early in J.H.'s disposition hearing, the court explained to him the range of placement alternatives if he was again found to be a delinquent:

COURT:     [T]here are numerous dispositions or things I can do to you in the event you are found to be a delinquent child and they range all the way from at the high end is placement at the Indiana Department of Corrections for placement at the Indiana Boys'

4

School. At the other end of the extreme is probation subject to certain terms and conditions of probation. In between those two extremes there are other things the Court can do. I could place you in some type of foster home, group home, or shelter care facility and that could either be a locked or a non-secure facility. So there is a broad range of things that the Court can do. Do you understand that?

J.H.:        Yes, sir.

Tr. at 10-11.

J.H. admitted that he committed acts that would have been theft and harassment if committed by an adult, and the juvenile court took his testimony to establish a factual basis for his admission. The court afforded J.H.'s parents the opportunity to make recommendations regarding placement. Because J.H. was on probation for a May 2011 true finding of conduct constituting theft if committed by an adult when he committed the instant offenses, both the chief probation officer and the prosecutor recommended placement at the Indiana Boys' School.

[PROSECUTOR]:   Looking back at his prior offenses that had him placed on probation as the Court will recall it also occurred at the school and involved J.H. taking the property of other people, in that case he was destroying that property. While in [sic] probation he basically went along and did the same offense, however this time it was just taking money. As the State understands he went to multiple different rooms before finding the money he was looking for. Taking into account all of his current offenses the State would agree that the juvenile is not a candidate for further probation. Looking at his record at the school it appears the [sic] J.H. has been expelled for a second time now in the last two years because of his numerous offenses including others that didn't make it to this level of adjudication here at the court system.

*Id*. at 16-17.

5

The record shows that J.H. has a history of committing delinquent acts at school. Despite an expulsion in March 2011 and a true finding in May 2011, J.H. continued to commit delinquent acts. His most recent expulsion resulted from the following acts, all committed on school grounds: pulling down a student's pants in the lunch line, stealing money from a student, and possessing a knife on school property. Thus, the safety of the community dictated a more restrictive placement for J.H.

Moreover, the juvenile court provided a lengthy explanation as to why placement at the Indiana Boys' School was in J.H.'s best interests:

COURT: [L]et's not equate Boys' School with, I mean it is a part of the Department of Corrections, but let's not equate Boys' School with prison. Let's not do that. Boys' School is another resource that the Court has to try to get kids to put their lives together. So believe me if my decision is Boys' School it is not, I am not doing that with the intent of ruining J.H.['s] life or saying that he can't make anything of himself in the future. That is the last thing in the world, in fact if I accept the premise that Boys' School was basically some place where I am going to warehouse him, you know, that is all it is, then the juvenile has just broken down and it is not workable. Now I am not saying Boys' School works for everybody. I don't want to say that it is perfect because it is not, but on the other had it is one more tool that we have to try to get kids to understand why they do things …. [A]t some point people like J.H. have to understand that there are consequences for their actions. Especially when you have the prior warning which was the probation that, hey, these are things that can happen to me and yeah I screwed up and I made some mistakes but they gave me a chance to go home and prove that I deserve to be at home as opposed to someplace else, but yet in spite of that we have a theft, we have a [prank] 911 call, and it sounds like some other problems at school. It doesn't sound like the message of the previous warning really took hold. Now the question then is, okay, given what I have in front of me do I send him home again and keep my fingers crossed and say, well, let's hope that the second warning, he understands the second

6

warning. That is the problem I have. And these aren't minor violations of probation. This isn't a situation where you know you didn't pay some fee or you know or got to school late one day or the little stuff that are violations but yet they are not violations of the law necessarily. We have new violations, new criminal violations, and that is concerning …. So, at this point in time I think we need to move to that next level[1] and see if Boys' School can provide J.H. with the structure that he needs to understand, to understand that, hey yeah there are consequences for my actions and I've got to think before I do certain things. So I think that the Boys' School option is appropriate at this particular point in time.

*Id*. at 22-25.

In sum, the juvenile court took into account various placement options and determined that placing J.H. in the Indiana Boys' School was in the best interests of both him and the community. As such, we find no abuse of discretion here. Accordingly, we affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

---

[1] To the extent J.H. relies on the juvenile court's reference to the Indiana Boys' School as "the next level" in arguing that the court failed to consider less restrictive alternatives, we disagree and note the court's earlier explanation to J.H. regarding alternative placements. Tr. at 10-11.